**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| ROBERT L. ERWIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cv-407-TWP-TAB |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff, Robert L. Erwin ("Mr. Erwin"), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI"). 42 U.S.C. §§ 405(g), 1383(c). Mr. Erwin's Complaint alleges the Administrative Law Judge ("ALJ") failed to accurately incorporate the medical expert's opinion, posed an incomplete hypothetical to the vocational expert, and failed to discuss all of the vocational expert's testimony. For the following reasons, the Court **AFFIRMS** the Commissioner's decision and **DENIES** Mr. Erwin's request for remand.

## I. BACKGROUND

Mr. Erwin has been diagnosed with multiple physical and psychological conditions, which affect his daily life and limit his ability to work. However, a vocational expert testified that there would be work available for a hypothetical individual with Mr. Erwin's limitations.

### A. Procedural History

On July 15, 2011, Mr. Erwin filed an application for SSI under Title XVI of the Social Security Act, alleging a disability onset date of July 1, 2005. On October 13, 2011 and

December 7, 2011, Mr. Erwin's application was denied and denied upon reconsideration, respectively.

On October 3, 2012, a hearing was held before the ALJ, at which Mr. Erwin testified. Two medical experts, John A. Pella, MD, ("Dr. Pella") board certified in internal medicine; and Larry Kravitz, PhD ("Dr. Kravitz"), a licensed clinical psychologist, testified by telephone conference call. Vocational expert, Constance Brown ("VE Brown"), testified in person.

On October 18, 2012, the ALJ denied Mr. Erwin's claim, and on January 9, 2013, the Appeals Council denied his request for review.

**B.    Factual and Medical History**

Mr. Erwin was forty-one (41) years old on the date his application was filed. In addition to mental impairments, he has a myriad of physical problems[1], including coronary artery disease, hypertension, chronic obstructive pulmonary disease, and obesity. He has limited education and previously worked as a construction worker, lube tech and assistant manager; however, he has not worked since 2005. His application for SSI is based on his July 11, 2011 application date. Mr. Erwin lives with his wife and spends most of his day watching television and napping.

Mr. Erwin demonstrated borderline intelligence. On December 28, 2010, he underwent a psychological examination that showed borderline to low average intellectual functioning. He was additionally diagnosed with alcohol dependence, adjustment disorder with depressed mood, a personality disorder, and borderline intellectual functioning.

Between April 2011 and May 2012, Mr. Erwin presented at the emergency room multiple times, and was seen by multiple doctors. At various times, he expressed ideas that he was very angry and might hurt someone; complained of increasing irritability, depression, anxiety,

---

[1] Discussion of Mr. Erwin's physical conditions is omitted. Though Mr. Erwin has several such conditions, they are not relevant to the mental impairments and mental residual functional capacity issues he has raised in his Complaint.

homicidal ideation, suicidal ideation, and alcohol abuse; and reported no interests and no friends. In one examination, Mr. Erwin was unable to complete a cognitive test, demonstrated limited insight and retarded motor activity, and presented a sad, irritable, and anxious mood.

During this time Mr. Erwin was diagnosed with a recurrent and severe major depressive disorder, an adjustment disorder with depressed mood, suicidal ideation, uncontrolled depression, an intermittent explosive disorder, alcohol abuse in remission, borderline intellectual functioning, an otherwise unspecified personality disorder with borderline traits, and agitation.

Doctors opined that Mr. Erwin had moderate limitations in his ability to interact appropriately with co-workers, understand and remember simple instructions, carry out simple instructions, make judgments on complex work-related decisions, and interact appropriately with the public. They further opined that Mr. Erwin had marked limitations in his ability to understand and remember complex instructions; carry out complex instructions; make judgments on complex work-related decisions; interact appropriately with the public, supervisors, and coworkers; and to respond appropriately to usual work situations and to changes in a routine work setting.

## C. Administrative Hearing Testimony

At the October 3, 2012 hearing, medical experts Dr. Kravitz, Dr. Pella and V.E. Brown testified. Dr. Kravitz, testified regarding Mr. Erwin's mental capacity and limitations. V.E. Brown, testified that there are presently existing jobs available in the economy for hypothetical individuals with Mr. Erwin's limitations.

### 1. Medical expert's testimony

Of importance here, is Dr. Kravitz testimony regarding his review of the evidence of Mr. Erwin's mental impairment:

I believe that he would be capable of understanding, remembering, and carrying out short and simple instructions. I think, you know, given his work history and his general mental status, he does have the capability for detailed instructions as well, but at this day and time, he reports the issue of special education for math and reading. He did undergo [inaudible] testing in 2008, which yielded scores in the borderline range, so I [inaudible] be limited to only short and simple instructions. Persistence would be also limited in terms of sticking with tasks, maintaining sustainability. He'd be limited to simple repetitive tasks. The depression sometimes becomes significant. While claimant is able to do some chores around the house he does rely on his wife to really handle the majority of the household responsibilities, and . . . from a mental perspective, I think limiting him to simple, repetitive tasks in terms of sustainability is supported. I think Claimant's most significant limitation has to do with his personal abilities. It's worth noting that any kind of history of impulsivity, of [inaudible] temper, he was reportedly home from school for repeated altercations. That's clearly an issue for him in terms of controlling his temper. For the most part [inaudible] it sounds like he's socially withdrawn. The two more recent CEs that I did give him marks in [inaudible] in terms of most daring of interacting (sic) relating others. . . . You know, having said that it appears that he has for the most part, under the right conditions, able to keep his temper in check. He does have some positive relations within the family. I didn't see any recent police involvement or documentation that he can't manage himself when he goes to doctor's appointments or goes to a store to pick up an item or two. So while that's [inaudible] limitation, I think within the context of very brief and superficial contact he would be capable of workplace interaction. . . . I think really I would [inaudible] public contact because of a likelihood that it will increase his frustration and cause him to lash out. I would suggest that in a working environment that he could perform his work tasks relatively independently and where supervision was only task-focused and instructive, so for instance, the supervisor would just come by just to make sure that his work assignment was being done correctly and maybe directing him to the next work assignment, but any more direction from the supervisor would become problematic. I think he would be (sic) a relatively static work environment where the conditions stay the same from day to day including the work location preferably a work environment with only a limited number of coworkers, not a work environment where there was a significant turnover of other workers from day to day, so people he could become comfortable with.

Tr. at 47-49 (questions omitted).

The ALJ then questioned Dr. Kravitz to affirm synthesis of his opinion:

It's your opinion based on your medical record that Mr. Erwin should be placed in the position where he only has to -- he only has to receive short and simple instructions, perform simple and repetitive tasks, and have only brief or superficial contact with others and no contact with the general public.

Tr. at 49.  To this the doctor responded, "I wouldn't put him in a work environment that was fast-paced or had strict production [inaudible]."  *Id*.

After an examination of Dr. Kravitz by Mr. Erwin's attorney, the ALJ asked for clarification whether Dr. Kravitz had set forth additional limitations in his subsequent testimony. Dr. Kravitz responded "No, the conditions I set forth with you I assumed counsel is kind of summarizing, and I agree with his interpretation or his re-explanation of it."  Tr. at 51.

### 2.      Vocational expert's testimony

VE Brown, testified that there would be work available for a hypothetical individual with Mr. Erwin's limitations.

> Q:  Please assume a hypothetical individual the age of 43 years with an eighth grade education, past relevant work as you just described, and the limitations as follows: Able to perform light work as described by the regulations; however, that work should have no exposure to respiratory irritants and no—which—no extremes—and then in that same regard no exposure to extremes of temperature or dangerous machinery or dangerous heights, and moreover, the work should be simple and repetitive requiring only short and simple instructions, brief and superficial contact with others except with respect to the general public, no general public contact, and should not require fast-paced or strict production.  With all of those restrictions, Ms. Brown, would there be any—any work that would satisfy that hypothetical.
>
> A:  There would be, Judge.

Tr. at 54.

When asked by Mr. Erwin's attorney specifically about the "no contact with the general public" limitation, the expert equivocated.

> Q:  What if like if the housekeepers direct him in which rooms to go to and had to constantly, you know—and then what about this no complete preclusion from public contact?  I mean isn't a—like a housekeeper—some of these jobs won't they have some incidental contact with the general public?
>
> A: They can work in office buildings after hours or in a—

5

Q: But if some—

A: —doctors' office after hours. There are—

Q: But what if the doctor works—

ALJ: Mr. Myers, let Ms. Brown finish her answer, okay?

A: The opportunities for housekeeping/cleaners is pretty wide from hotel, to doctors' offices, to business offices, and the ability—because there are so many of them in the state to pick and choose as to what time of day you would work is reasonably available.

Q: I understand, but precluding complete—completely precluding public contact, don't you agree that that would be difficult. Say you work at a doctor's office and the doctor forgot his laptop and went back to his office that evening or someone happens to be—has a project so they're working late—

A: Total preclusion from the public is going to, even on an incidental basis is not going to be easy. I'm directing my comments toward the environment that the individual is working in, and incidental bumping into a doctor who comes in after hours, to tell you the truth I did not take into account.

Q: Okay, so if—if—if the doctor's limitation as to completely preclude public contact, do you think you can—I mean is there a job that—

A: I don't think you can do anything that precludes total public contact other than staying in your home. So—

Tr. at 57-58.

## II. DISABILITY AND STANDARD OF REVIEW

### A. The meaning of disability

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to qualify as disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous

work, but any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

## B.     Five-step analysis of disability

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a severe impairment that significantly limits his ability to perform basic work activities, and that meets the durational requirement, he is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(iii). In order to determine steps four and five, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96–8p). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

## C.     Review of the ALJ's decision

In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 42 U.S.C. § 405(g). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Dixon*, 270 F.3d at 1176.  Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ.  *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993).  The "ALJ's decision must be based upon consideration of all the relevant evidence."  *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

**D.      Sentence Six Remand for further evidence**

Sentence six of 42 U.S.C § 405(g) provides that the reviewing court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."

"'New' evidence is evidence 'not in existence or available to the claimant at the time of the administrative proceeding.'"  *Jens v. Barnhart*, 347 F.3d 209, 214 (7th Cir. 2003) (quoting *Sample v. Shalala,* 999 F.2d 1138, 1144 (7th Cir. 1993)).  Statements that are based on evidence available at the time of the administrative hearing do not constitute new evidence, even if not written or prepared prior to the administrative proceeding.  *See id.*; *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997).  If evidence "does not provide a new perspective on the information that was available to [the claimant] before his hearing before the ALJ," it is not sufficiently new. *Jens*, 347 F.3d at 214.

"Evidence is 'material' if there is a 'reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered.'"  *Jens*, 347 F.3d at 214 (quoting *Perkins,* 107 F.3d at 1296).

### III.  THE ALJ'S DECISION

The ALJ addressed each step of the analysis and found that Mr. Erwin was not disabled because there were jobs that he could do despite his limitations.

At each step, the ALJ made the following findings:

1. Mr. Erwin had not engaged in substantial gainful activity since the date of his application.

2. Mr. Erwin had the following severe impairments: coronary artery disease, hypertension, chronic obstructive pulmonary disease, obesity, borderline intellectual functioning, major depressive disorder, personality disorder not otherwise specified, and alcohol abuse.

3. Mr. Erwin did not have an impairment or combination of impairments meeting or equal to a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).

4. Mr. Erwin was unable to perform any past relevant work.

5. There are jobs that exist in significant numbers in the national economy that Mr. Erwin can perform.

In order to reach the findings at steps four and five, the ALJ found that Mr. Erwin had the RFC to perform light work with the following exceptions: "he can have no exposure to respiratory irritants, temperature extremes, dangerous machinery, or heights," "[t]he work must be limited to simple repetitive tasks that require short and simple instructions. . . . [and] must not require fast pace or strict production," and "[h]e can have only brief and superficial contact with coworkers and supervisors, and no contact with the general public."

In support of his RFC finding, the ALJ noted Dr. Kravitz's testimony that Mr. Erwin's work must involve only brief superficial contact with coworkers and supervisors, no fast pace or strict production, and no contact with the general public. Further, the ALJ found Dr. Kravitz's testimony to be entitled to great weight.

At step five, the ALJ noted the vocational expert's testimony that an individual of Mr. Erwin's age, education, work experience, and RFC would be able to perform the requirements of representative occupations such as housekeeper cleaner, hand cutter and trimmer, and office machine operator. The ALJ did not discuss the impact of precluding contact with the general public beyond stating it as a limitation in his RFC.

Having made the foregoing findings, the ALJ found that Mr. Erwin was not disabled as defined in the Social Security Act.

## IV. DISCUSSION

Mr. Erwin has no dispute with the testimony of Dr. Kravitz, the medical expert, but alleges three deficiencies in the ALJ's decision-making:

1. the ALJ failed to accurately incorporate the medical expert's opinion into his RFC,

2. the ALJ posed an incomplete hypothetical to the vocational expert, and

3. the ALJ failed to discuss all of VE Brown's testimony.

Finally, Mr. Erwin requests that the case be remanded in light of further evidence if his foregoing arguments are not successful.

Mr. Erwin's arguments fail because the ALJ's hypothetical to the vocational expert and subsequent opinion accurately incorporated the medical expert's opinion and the ALJ did not fail to discuss any significant evidence contrary to his opinion. Finally, remand is not appropriate because the single-word opinion of a disagreeing vocational expert is neither new nor material.

**A.** **The ALJ accurately incorporated the medical expert's opinion into the hypothetical that he posed to the vocational expert and into the RFC finding.**

Mr. Erwin argues that the ALJ's hypothetical to the vocational expert and his RFC were deficient because the ALJ failed to accurately incorporate the medical expert's testimony. He argues that the entirety of Dr. Kravitz's testimony includes more limitations than just those incorporated by the ALJ. On this point, he relies on *Greenwood v. Barnhart*, 433 F. Supp. 2d 915 (N.D. Ill. 2006), in which the court found that the ALJ had misstated the medical expert's testimony. There, the medical expert testified "that Claimant could use his right hand for handling and fingering for one-third to two-thirds of the day." *Id*. at 920. However, in the ALJ's RFC finding, he stated that the claimant's limitations allowed "fine dexterity only 2/3 of the day." *Id*. at 926. The ALJ did not mention "handling" and did not explain the discrepancy between his finding and the testimony. *Id*. On that basis, the court held that the RFC finding was not supported by substantial evidence and remanded the case for further proceedings. *Id*. at 931.

Here, the medical expert, Dr. Kravitz, agreed with the following limitations for Mr. Erwin: "Mr. Erwin should be placed in the position where he only has to—he only has to receive short and simple instructions, perform simple and repetitive tasks, and have only brief or superficial contact with others and no contact with the general public." Tr. at 49. To that, the doctor added, "I wouldn't put him in a work environment that was fast-paced or had strict production [inaudible]." Tr. at 49. Dr. Kravitz affirmed that there were no additional restrictions. Tr. at 50.

To VE Brown, the ALJ posed a hypothetical individual with Mr. Erwin's limitations: "[T]he work should be simple and repetitive requiring only short and simple instructions, brief and superficial contact with others except with respect to the general public, no general public

contact, and should not require fast-paced or strict production." Tr. at 54. In his decision, the ALJ listed Mr. Erwin's limitations: "The work must be limited to simple, repetitive tasks that require short and simple instructions. He can have only brief and superficial contact with coworkers and supervisors, and no contact with the general public. The work must not require fast pace or strict production." Tr. at 25.

Mr. Erwin argues that the ALJ posed an incomplete hypothetical to VE Brown when he failed to incorporate additional testimony, elicited by Mr. Erwin's counsel, from Dr. Kravitz. However, in response to the ALJ's confusion, Dr. Kravitz clearly articulated that the additional testimony was interpretation and/or explanation and not additional restrictions. Here, unlike in *Greenwood*, the ALJ did not misstate or misunderstand the medical expert's testimony. Rather, he clarified any misunderstanding with the expert during his testimony. Thus, the ALJ did not fail to incorporate any evidence into his hypothetical.

Mr. Erwin further argues that the ALJ failed to incorporate additional testimony by Dr. Kravitz into the RFC finding. This argument fails for the same reason that it failed in regard to the hypothetical posed to VE Brown. In light of Dr. Kravitz's testimony, the ALJ accurately incorporated the medical expert's testimony into both the hypothetical to VE Brown and the RFC finding.

**B.** **The ALJ did not fail to discuss significant evidence contrary to his ruling.**

Next, Mr. Erwin argues that the vocational experts complete testimony leads to the conclusion that there were no jobs available to Mr. Erwin, and that the ALJ thus failed to discuss significant evidence contrary to his ruling. However, VE Brown, testified that there were jobs available to a hypothetical individual with Mr. Erwin's limitations. Her later responses to questions about a hypothetical individual with greater limitations do not alter or revise her

opinion, and in not addressing this later testimony, the ALJ did not fail to discuss significant evidence contrary to his ruling.

It is clear from the record that the ALJ's understanding of the limitations contained in the RFC finding are stated in terms of the work that Mr. Erwin is capable of performing. In his examination of Dr. Kravitz, the ALJ requested clarification that the restrictions discussed "were the restrictions that we were talking about *in terms of work* . . ." Tr. at 51 (emphasis added). Further, the RFC limitations are expressed in the ALJ's decision as limitations to Mr. Erwin's "*capacity to perform light work*." Tr. at 25 (emphasis added). Thus, these limitations must be understood to relate only to the work environment.

Further, it is clear that the vocational expert's testimony was similarly limited to the work environment. Mr. Erwin's attorney asked VE Brown about "incidental contact with the general public" and whether complete preclusion of public contact is feasible. Tr. at 57. In response, VE Brown stated "[t]otal preclusion from the public is going to, even on an incidental basis is not going to be easy. *I'm directing my comments toward the environment that the individual is working in*, and incidental bumping into a doctor who comes in after hours, to tell you the truth I did not take into account. . . . I don't think you can do anything that precludes total public contact other than staying in your home." Tr. at 58 (emphasis added).

The ALJ does not discuss this portion of the testimony in his decision, but this fact does not require that the decision be disturbed. VE Brown testified that there were jobs available for a hypothetical individual with Mr. Erwin's limitations. The vocational expert's subsequent testimony does not clearly refute her earlier testimony. Thus, the ALJ did not fail to discuss significant evidence contrary to his ruling.

Mr. Erwin also argues that the ALJ's decision is deficient because it fails to discuss the vocational expert's testimony regarding additional limitations. For the reasons discussed *supra* Part IV(A), these limitations were properly excluded from the ALJ's hypothetical questioning to the vocational expert and from his RFC finding. For that reason, failure to address this testimony in the decision is not error.

**C.    A Sentence Six remand is not called for based on the opinion of Vocational Expert Michael Blankenship.**

Finally, Mr. Erwin requests that the Court remand the case to the ALJ for reconsideration in light of evidence submitted after the ALJ issued his opinion. Following the hearing, a second vocational expert retained by Mr. Erwin's counsel submitted additional evidence. This evidence consists of a single page document entitled "Interrogatory For Vocational Expert Michael Blankenship" in which the respondent provides a total of nine words in answer to five questions. The Interrogatory concludes with a simple "No" in response to the following question: "Based on the restrictions given by Dr. Kravitz, Ph.D do you think there are any jobs a hypothetical individual could perform?"

To receive a Sentence Six remand, Mr. Erwin must prove that Michael Blankenship's ("VE Blankenship") opinion is new, material, and that he has good cause for failing to submit the additional evidence to the ALJ. 42 U.S.C. § 405 (g). Here, the additional evidence conveys no information beyond the simple fact that a vocational expert identified by Mr. Erwin after the hearing disagrees with the vocational expert who testified during the hearing. VE Blankenship's opinion states that it is based on the restrictions given by Dr. Kravitz at the administrative hearing. Beyond disagreement, the Interrogatory fails to provide any evidence at all, new or old, because it offers no explanation or support for its conclusion. Simply put, the Interrogatory

"does not provide a new perspective on the information that was available to [Mr. Erwin] before his hearing before the ALJ." *Jens*, 347 F.3d at 214.

Further, the Interrogatory cannot be said to be material. Even if the evidence had been considered, it is not reasonably probable that the Commissioner would have disregarded VE Brown's testimony in favor of an unexplained, unsupported statement and reached a different conclusion.

## V. <u>CONCLUSION</u>

To reiterate, the Court's review focuses not on whether Mr. Erwin is disabled, but on whether the ALJ's findings were supported by substantial evidence. The ALJ's opinion incorporated the medical expert's opinion, which had been correctly posed to the vocational expert, and did not fail to discuss any substantial evidence. Further, remand is not appropriate in this case because the offered evidence is neither new nor material. Accordingly, the Court **AFFIRMS** the Commissioner's decision and **DENIES** Mr. Erwin's request for remand.

**SO ORDERED.**

Date: _03/10/2014_

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Michael G. Myers
mgmyers10@sbcglobal.net

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov